UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

BARBARA S.,

                Plaintiff,

       v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

_____

**DECISION AND ORDER**

6:21-CV-06244 EAW

## <u>INTRODUCTION</u>

Represented by counsel, plaintiff Barbara S. ("Plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 9; Dkt. 11), and Plaintiff's reply (Dkt. 12). For the reasons discussed below, Plaintiff's motion (Dkt. 9) is granted to the extent that the matter is remanded for further administrative proceedings and the Commissioner's motion (Dkt. 11) is denied.

- 1 -

**BACKGROUND**

Plaintiff protectively filed her applications for DIB and SSI on February 15, 2018. (Dkt. 7 at 19, 90-91).[1]  In her applications, Plaintiff alleged disability beginning August 5, 2017.  (*Id.* at 19, 73).  Plaintiff's applications were initially denied on May 9, 2018.  (*Id.* at 19, 92-99).  At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Asad M. Ba-Yunus on May 18, 2020.  (*Id.* at 19, 33-71).  On May 28, 2020, the ALJ issued an unfavorable decision.  (*Id.* at 13-32).  Plaintiff requested Appeals Council review; her request was denied on February 19, 2021, making the ALJ's determination the Commissioner's final decision.  (*Id.* at 5-12).  This action followed.

**LEGAL STANDARD**

I.     **District Court Review**

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)

---

[1]     When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

(quotation omitted).  It is not the Court's function to "determine *de novo* whether [the claimant] is disabled."  *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).  However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law."  *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.  <u>Disability Determination</u>

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act.  *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986).  At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity.  *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities.  *Id*. §§ 404.1520(c), 416.920(c).  If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled."  If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of

Regulation No. 4 (the "Listings"). *Id*. §§ 404.1520(d), 416.920(d).  If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *see id*. §§ 404.1509, 416.909, the claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments.  *See id*. §§ 404.1520(e), 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work.  *Id*. §§ 404.1520(f), 416.920(f).  If the claimant can perform such requirements, then he or she is not disabled.  If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled.  *Id*. §§ 404.1520(g), 416.920(g).   To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience.  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted).

## **DISCUSSION**

## I.   **The ALJ's Decision**

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. §§ 404.1520 and 416.920.  Initially, the ALJ determined that Plaintiff met the insured status requirements of the Act though December

31, 2022.  (Dkt. 7 at 21).  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since August 5, 2017, the alleged onset date.  (*Id*.).

At step two, the ALJ found that Plaintiff suffered from the severe impairment of benign paroxysmal positional vertigo. (*Id.* at 22).  The ALJ further found that Plaintiff's medically determinable impairment of "history of left hand injury" did not "meet the minimal twelve-month durational requirement on a consecutive basis" and was accordingly non-severe.  (*Id*.).  Plaintiff's medically determinable impairment of obesity was also determined to be non-severe.  (*Id*.).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id*. at 23).  The ALJ did not particularly consider the criteria of any specific Listings in reaching this conclusion, nor did the ALJ expressly consider the effects of Plaintiff's obesity.  (*Id.*).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the following additional limitations:

> [Plaintiff] may no more than occasionally balance, stoop, or climb ramps and stairs, but may never kneel, crouch, crawl, or climb ladders, ropes, or scaffolds, and must avoid all hazards, including unprotected heights, dangerous machinery, or operating a motor vehicle.

(*Id.*).  At step four, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that Plaintiff was capable of performing her past relevant work as a barista/coffee maker.  (*Id.* at 26).  Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act.  (*Id.* at 27-28).

## II.   <u>Remand for Further Administrative Proceedings is Required</u>

Plaintiff asks the Court to reverse or, in the alternative, remand this matter to the Commissioner, arguing that: (1) the ALJ erred in finding that Plaintiff's history of left-hand injury was non-severe; and (2) the ALJ erred in his consideration of the medical opinions of record. (Dkt. 14 at 1). For the reasons set forth below, the Court finds that the ALJ committed error in determining that Plaintiff's history of left-hand injury was non-severe and that remand for further proceedings is required.

### A.   <u>Step Two Severity Determination</u>

At step two of the disability analysis, the ALJ determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). "The following are examples of 'basic work activities': 'walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling . . . seeing, hearing, and speaking . . . [u]nderstanding, carrying out, and remembering simple instructions . . . [u]se of judgment . . . [r]esponding appropriately to supervision, co-workers and usual work situations.'" *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012) (citations omitted), *adopted*, 32 F. Supp. 3d 253 (N.D.N.Y. 2012).

"The claimant bears the burden of presenting evidence establishing severity." *Id.* Step two's "severity" requirement is *de minimis* and is meant only to screen out the weakest of claims. *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995); *see also McIntyre v. Colvin,* 758 F.3d 146, 151 (2d Cir. 2014) ("[A]n ALJ's decision is not necessarily internally inconsistent when an impairment found to be severe is ultimately found not disabling: the

standard for a finding of severity under Step Two of the sequential analysis is *de minimis* and is intended only to screen out the very weakest cases."); *O'Connor v. Saul*, No. 1:18-CV-00740 CJS, 2020 WL 1242408, at *3 (W.D.N.Y. Mar. 16, 2020) ("The standard at step two is quite low.").  However, despite this lenient standard, the "'mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, by itself, sufficient to render a condition 'severe.'"  *Taylor*, 32 F. Supp. 3d at 265 (quoting *Coleman v. Shalala*, 895 F. Supp. 50, 53 (S.D.N.Y. 1995)).  Rather, "to be considered severe, an impairment or combination of impairments must cause 'more than minimal limitations in [a claimant's] ability to perform work-related functions.'"  *Windom v. Berryhill*, No. 6:17-cv-06720-MAT, 2018 WL 4960491, at *3 (W.D.N.Y. Oct. 14, 2018) (quoting *Donahue v. Colvin*, No. 6:17-CV-06838(MAT), 2018 WL 2354986, at *5 (W.D.N.Y. May 24, 2018)) (alteration in original); *Lugo Rodriguez v. Berryhill*, No. 3:17-CV-00093 (VLB), 2018 WL 1135330, at *4 (D. Conn. Mar. 2, 2018) ("In other words, any claim in which the medical evidence establishes more than a 'slight abnormality' with 'no more than a minimal effect on an individual's ability to work' should be determined 'severe.'" (quoting *Bowen v. Yuckert*, 482 U.S. 137, 154 n.12 (1987)).

Further, a severe impairment must persist for at least twelve months in order to be disabling.  *See* 42 U.S.C. § 423(d)(1)(A) (disability involves impairment "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months").  However, the severity inquiry is distinct from the durational requirement.  *See Gibson v. Comm'r of Soc. Sec.*, No. 21-CV-41 (PKC), 2022 WL 4661554, at *2 (E.D.N.Y. Sept. 30, 2022) ("[A]lthough whether an impairment is

severe and whether an impairment meets the duration requirement are both addressed at step two in the evaluation process, these are separate questions that require separate analyses." (citation omitted)). "Courts within this circuit have discerned errors when statutory disability-duration analysis is conflated with regulatory impairment-severity analysis." *Melia v. Colvin*, No. 14-CV-226 (MAD), 2015 WL 4041742, at *7 (N.D.N.Y. July 1, 2015).

Here, there was evidence in the record that Plaintiff suffered from a left-hand impairment.  As the ALJ acknowledged, there were references to left hand/arm injury in a car accident in 2003, a 2010 fracture of the distal radial metaphysis, and a 2016 fracture of the left fourth metacarpal.  (Dkt. 7 at 22).  In May of 2018, Plaintiff was seen by an orthopedist, and it was noted that she continued to have pain in her left hand, that she had stiffness and hyperextension in her metacarpals as well as "intrinsic atrophy," and that the plan was for a tendon transfer "to aid in wrist extension and take pressure off [the metacarpal] joints of [the] left hand."  (*Id.* at 441, 552).  Plaintiff also underwent occupational therapy related to her left hand in 2019.  (*Id.* at 519-33).  Orthopedics records from February of 2020 indicate that Plaintiff has "complex injuries [of the] left arm and hand" and "minimal active use of the left hand."  (*Id.* at 535).  In March of 2020, treating nurse practitioner ("NP") Caitlin Tilleck completed a physical residual functional capacity questionnaire in which she indicated that since May or June of 2017, Plaintiff had been significantly limited in using her left hand.  (*Id.* at 556-60).  Plaintiff testified before the ALJ that she had done significant damage to her left arm in the 2003 car accident, and that she lacked full mobility and had done physical therapy and worn braces.  (*Id.* at 60-62).

At step two of the analysis, the ALJ in this case considered some but not all of this evidence. (Dkt. 7 at 22). Specifically, the ALJ made no mention of the occupational therapy records from 2019. The ALJ also did not address NP Tilleck's 2020 evaluation. The ALJ then concluded, "the history of left hand injury does not appear to meet the minimal twelve-month durational requirement on a consecutive basis to be considered as severe impairment." (*Id.*).

The ALJ's step two analysis of Plaintiff's left-hand impairment was both legally erroneous and unsupported by substantial evidence. As to legal error, the ALJ improperly conflated the severity inquiry and the durational inquiry. *See, e.g., Gibson*, 2022 WL 4661554, at *2 ("The ALJ found that Plaintiff's bilateral trigger thumbs were non-severe because there was no evidence this condition caused significant limitations for at least 12 months. By so reasoning, the ALJ conflated the requirement of severity with the requirement of duration, *i.e.*, she interpreted the regulation to require that the limitation had to be severe for at least 12 months. The ALJ thus erroneously found that Plaintiff's impairment was not severe because of its duration, rather than considering whether it was more than *de minimis* in terms of severity and then separately evaluating its actual or expected duration." (citation, alterations, and quotation omitted)); *Durgan v. Astrue*, No. 12-CV-279 DNH/CFH, 2013 WL 1122568, at *3 (N.D.N.Y. Feb. 19, 2013) ("Courts . . . reverse for legal error SSA decisions that inappropriately conflate the analysis of severity with the analysis of duration."), *adopted*, 2013 WL 1104143 (N.D.N.Y. Mar. 18, 2013).

As to the evidentiary basis for the ALJ's finding, the ALJ's failure to consider the 2019 occupational therapy records or NP Tilleck's retrospective opinion from March of

2020 renders the assessment unsupported by substantial evidence. *See Wright v. Comm'r of Soc. Sec.*, No. 18-CV-05971 (FB), 2020 WL 1323013, at *2 (E.D.N.Y. Mar. 20, 2020) ("An ALJ's factual findings are entitled to deference, but that deference is not unlimited and reviewing courts must consider the record as a whole to assess whether (or not) an ALJ's findings mischaracterize or ignore relevant evidence."); *Brennon v. Colvin*, 2015 WL 1402204, at *16 (S.D.N.Y. March 25, 2015) ("In evaluating the record, the ALJ may not ignore or mischaracterize evidence of a person's alleged disability.").

The ALJ's step two error was not harmless. A step two error is harmless "when the ALJ considers the non-severe impairments at subsequent steps in his or her analysis." *Vilma Seranno S. v. Kijakazi*, No. 3:22-CV-00214 (KAD), 2023 WL 2743283, at *4 (D. Conn. Mar. 31, 2023). However, where there is "no discernible basis for the court to conclude that [the] ALJ . . . factored [the non-severe impairments] . . . into her ultimate residual functional capacity determination," the error is not harmless. *Snyder v. Colvin*, No. 5:13-CV-585 GLS/ESH, 2014 WL 3107962, at *5 (N.D.N.Y. July 8, 2014). Here, it does not appear that the ALJ included in the RFC analysis any limitations related to Plaintiff's left-hand impairment, nor that the ALJ meaningfully considered the need for any such limitations. To the contrary, the ALJ merely stated without elaboration that "the non-severe impairments do not add further to the impairments already outlined or to the work-related restrictions that are included in the established residual functional capacity." (Dkt. 7 at 22-23). Under these circumstances, the Court finds remand for appropriate consideration of both the severity and duration of Plaintiff's left-hand impairment necessary.

B.    **Remaining Argument**

As set forth above, Plaintiff has identified an additional reason why she contends the ALJ's decision was erroneous.  However, because the Court has already determined, for the reasons previously discussed, that remand of this matter for further administrative proceedings is necessary, the Court declines to reach these issues.  *See, e.g., Bell v. Colvin*, No. 5:15-CV-01160 (LEK), 2016 WL 7017395, at *10 (N.D.N.Y. Dec. 1, 2016) (declining to reach arguments "devoted to the question whether substantial evidence supports various determinations made by [the] ALJ" where the court had already determined remand was warranted); *Morales v. Colvin*, No. 13cv06844 (LGS) (DF), 2015 WL 13774790, at *23 (S.D.N.Y. Feb. 10, 2015) (the court need not reach additional arguments regarding the ALJ's factual determinations "given that the ALJ's analysis may change on these points upon remand"), *adopted*, 2015 WL 2137776 (S.D.N.Y. May 4, 2015).

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. 9) is granted to the extent that the matter is remanded for further administrative proceedings. Defendant's motion for judgment on the pleadings (Dkt. 11) is denied.  The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: June 29, 2023
         Rochester, New York